**Stuart LEVY, Plaintiff,**

v.

**AARON FABER, INC., et al., Defendants.**

**No. 91 CIV. 7470 (KMW).**

United States District Court,
S.D. New York.

April 13, 1993.

---

Jeffrey M. Gutfleisch and Michael L. Macklowitz, New York City, for plaintiff.

Joel A. Chernov and Stephanie Marquesano, Parker, Chapin, Flattau & Klimpl, New York City, for defendants.

## OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Defendants move for partial summary judgment and to dismiss the amended complaint in this thirteen count action for, among other things, breach of fiduciary duty, dissolution and liquidation of a limited partnership and a corporation, and RICO violations. Both parties also move for sanctions pursuant to Federal Rule of Civil Procedure 11. For the reasons discussed below, I grant, in part, defendants' motion for partial summary judgment because applicable statutes of limitations bar many of plaintiff's claims. I also grant defendants' motion to dismiss plaintiff's RICO count for failure to plead the predicate acts with sufficient particularity, and I dismiss the remaining pendent state law claims for lack of subject matter jurisdiction. Finally, I grant, in part, defendants' motion for sanctions, and I deny plaintiff's cross-motion for sanctions.

## I. BACKGROUND

The amended complaint alleges that in January 1977 plaintiff invested money in defendant Aaron Faber, Inc. ("the corporation"), for which he was to receive one-third of the corporation's shares of stock, Amended Complaint ¶ 5, although he never actually received any certificates of stock, *id.* ¶ 76. It

further alleges that in September 1977, plaintiff and defendants Faber and Kiley formed defendant Aaron Faber Associates ("the partnership"), in which the corporation became the general partner and plaintiff and the individual defendants became limited partners. *Id.* ¶ 6. Although the amended complaint makes no mention of it, plaintiff's memorandum in opposition to defendants' motion to dismiss explains that soon after consummating these transactions, Mr. Levy left the area in 1979 "because of personal concerns unrelated to this case," and that he did not return until 1988. Plaintiff's Memorandum at 2–3.

During his absence, he alleges, the events giving rise to this action began to occur. "On or about January 1979," for example, "the directors of the Corporation met in an illegal meeting and voted to dismiss Plaintiff LEVY as an officer and director of the Corporation." Amended Complaint ¶ 30. Since that same date, defendants have allegedly excluded him from participation in the affairs of the corporation and the partnership. *Id.* ¶ 46. Defendants also allegedly failed to declare dividends or partnership distributions, *id.* ¶ 32, or to issue him shares of stock, *id.* ¶ 76, and have allegedly submitted fraudulent tax returns on behalf of the partnership and the corporation, *id.* ¶ 82.

Upon returning to the area, Mr. Levy began to assert his alleged rights as shareholder and limited partner; for example, in May 1991, he demanded that the corporation declare dividends. *Id.* ¶ 72. Defendants, however, refused to accede to that and other demands, asserting that Mr. Levy is not and was never a shareholder in the corporation, Defendants' 3(g) statement ¶¶ 5–6, although admitting his role (in 1977, at least) as a limited partner in the partnership, *id.* ¶ 8. After seeking informal resolution of his claims, Mr. Levy filed this action in state court, and defendants removed it to this court.

Defendants then moved to dismiss, asserting, among other things, that various counts of the amended complaint fail to state a claim, fail to plead fraud with particularity, are barred by applicable statutes of limitations, or are improper because Mr. Levy

lacks standing to bring them. Recognizing (a) that the amended complaint complains of wrongs dating back to the late 1970's, *see, e.g.,* ¶¶ 18, 30, 58, and "wherefore" clause (a)(i), (c)(i), but that certain facts might allow plaintiff to bring such remote claims, and (b) that much of the parties' arguments focussed upon whether plaintiff had any evidence to support his claim to have held shares in the corporation during the applicable limitations periods, the Court notified the parties that it would partially convert the motion to dismiss into a motion for summary judgment on the statute of limitations defense. The parties conducted discovery and submitted statements pursuant to Local Rule 3(g) on that issue. Although the Court allowed the parties to submit additional briefing on the statute of limitations issue, neither party chose to do so.

## II. DISCUSSION

### A. Motion for Summary Judgment Based on Statute of Limitations Defense

Upon reviewing the 3(g) statements and the parties' other submissions, I find that the respective statutes of limitation bar all claims arising from defendants' alleged actions prior to the commencement of the various causes of action's respective limitations periods, which range from three to six years prior to the commencement of this action, and bar all claims arising from Mr. Levy's alleged status as a shareholder in the corporation. Before turning to my discussion of these findings, I will first state the standards governing my determination of the motion.

#### 1. Standards Governing Motions for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991). When deciding a motion for summary judgment, a court must " 'resolve all ambiguities and inferences ... in the light most favorable to

the party opposing the motion.'" *Shockley v. Vermont State Colleges*, 793 F.2d 478, 481 (2d Cir.1986) (citations omitted).

The moving party bears the initial burden of demonstrating that there exists no material issue of fact and that he or she is entitled to judgment as a matter of law. *See Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (citations omitted). The movant may carry her burden by demonstrating the absence of evidence to support the non-movant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Motions for summary judgment must be denied if reasonable minds could differ as to the importance of the evidence and if "'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn....'" *Brady v. Town of Colchester*, 863 F.2d at 210. However, when the moving party has met its burden under Rule 56(c) of the Federal Rules of Civil Procedure, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and if no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

### 2. *Applied to This Case*

Statutes of limitations, as the Supreme Court has explained, "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979) (citations omitted). Regardless of the merits of a claim, the claim fails if it is brought too late; "statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims." *Kubrick*, 444 U.S. at 125, 100 S.Ct. at 361. It is because Mr. Levy has waited too long to pursue many of his claims that I must grant partial summary judgment to defendants.

### a. *The Running of the Limitations Periods*

■ Because the statutes of limitations provide affirmative defenses, defendants retain the burden of proof on this issue. However, in this case, it is obvious from the face of the complaint that many of Mr. Levy's claims have long ago become stale, and on those claims defendants carry their initial moving party burden merely by pointing to the words of the complaint. For example, plaintiff's eighth cause of action demands that the corporation remedy its failure to issue Mr. Levy certificates of shares for his alleged one-third interest in the corporation. However, by Mr. Levy's account, the failure to issue those shares occurred in January 1977, *fifteen years* before the commencement of this action. Any wrong thus occurred in a period far too remote to fall within any applicable statute of limitations. Similarly, the first cause of action demands defendants to account for all money received from the corporation and the partnership since 1977. Again, to the extent that this cause of action seeks orders directed at remedying and compensating for actions that occurred more remotely than that allowed by the applicable statutes of limitations, summary judgment must be granted to the defendants.

■ In addition, the applicable statutes of limitations bar *all* claims grounded in Mr. Levy's status as a shareholder in the corporation, because Mr. Levy has failed to provide any evidence that he possessed that status within the applicable limitations periods, despite conducting court-guided discovery on the issue. As mentioned, defendants deny that Mr. Levy ever held shares in the corporation. To carry their moving party burden to show that the evidence supports their defense, defendants produced the corporation's stock transfer ledger and the corporation's 1120 S Form, both of which, by failing to list Mr. Levy as a shareholder, indicate that he is not now a shareholder and was not a shareholder within any applicable limitations period. Defendants also produced a shareholder agreement dated November 13, 1977—a date subsequent to Mr.

Levy's alleged share acquisition date—stating that Mr. Faber and Ms. Kiley are the sole shareholders of the corporation. They further have pointed to Mr. Levy's inability to produce any evidence—documentary or otherwise—that he held shares during the limitations periods.[1] Absent evidence to the contrary, defendants' evidence shows either that Mr. Levy never was a shareholder in the corporation or that, even if he was one at some point in 1977, he was deprived of that status more than fifteen years ago. Under either interpretation of the facts, defendants have succeeded in carrying their initial burden of demonstrating both the absence of a factual issue regarding their affirmative defense and the absence of any support for Mr. Levy's claim that he held shares in the corporation during the limitations period.

■ The burden consequently shifts to Mr. Levy to show that, in fact, he does have evidence that would allow a rational fact-finder to conclude that he held shares within the limitations period. *See Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Mr. Levy has completely failed to meet this burden. He has not provided one piece of documentary evidence—whether it be a share of stock, a cancelled check showing his investment, or a letter confirming his stock ownership—that would allow a rational fact-finder to conclude that he ever possessed the status of shareholder, let alone that he possessed that status within the limitations period. In fact, Mr. Levy essentially admits in his amended complaint that the alleged wrongs he suffered occurred more than ten years prior to the commencement of his actions. Thus, in ¶ 58, he alleges that in January 1979 "Plaintiff was formally deprived of all employment, participation, and management of the business," and, in ¶ 46, he similarly admits that "since around January 1979, Plaintiff has been excluded from participation in the affairs of the corporation and partnership." All he has provided this court to support his

position are *his attorney's* representations [2] that plaintiff will testify that in 1977 he was promised shares in a corporation. Such assertions might suffice to create a factual issue regarding whether defendants wronged Mr. Levy fourteen or sixteen years ago. In light of the evidence produced by defendants, however, they do not suffice to create a factual issue regarding his shareholder status within the limitations period, because, even accepting his allegation of the 1977 transaction as true, he was clearly deprived of any rights accruing from that transaction by 1979—a time too remote to fall within any applicable statutes of limitations periods.

### b. *Equitable Tolling and Equitable Estoppel*

■ Mr. Levy apparently recognizes the age of most of his claims, because he seeks to carry his burden of showing a factual issue by arguing that a material issue of fact exists regarding whether the doctrines of equitable estoppel and equitable tolling excuse his failure to comply with the applicable statutes of limitations. It is true that under "extraordinary circumstances" these doctrines can excuse a claimant's failure to pursue his claims in a timely manner. *Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986). However, a claimant who wishes to take advantage of these doctrines must generally show that the alleged wrongdoer either fraudulently concealed the wrongdoing or somehow misrepresented the limitations period to the claimant, *see id.* at 60–61, *and* that the claimant's "continuing ignorance was not attributable to lack of diligence on his part." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir.), *cert. denied*, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988). Although the existence of a fiduciary duty can give rise to a presumption of fraudulent concealment, that presumption still cannot help a party who was not diligent in protecting his rights; "the rule is that a wronged party is held to 'discover' a wrong,

---

1. I recognize that a party moving for summary judgment on the basis of an affirmative defense cannot carry her burden merely by pointing to the absence of evidence supporting the non-moving party's claim. However, once the moving party has provided evidence supporting her claim, pointing to the absence of rebuttal evidence on the part of the non-moving party helps to demonstrate the absence of a factual issue regarding the merit of the moving party's claim.

2. I note that plaintiff has not submitted an affidavit on his own behalf.

and thereby start the statute of limitations running, not upon actual discovery of the other party's wrong, but 'at the point where the facts could have been ascertained by using reasonable diligence.'" *Zola v. Gordon,* 685 F.Supp. 354, 365 (S.D.N.Y.1988) (citations omitted). And, the claimant has the burden to show that he exercised due diligence. *Id.*

■ In this case, Mr. Levy has failed to carry his burden of showing any factual issues that would allow the application of either equitable doctrine. Not only has he failed to show that defendants made any representation, let alone misrepresentation, to him during the limitations period, but he has also not shown this court any action he took during the applicable limitations period that a reasonable fact finder could construe as reasonable diligence. Not once during his ten year voluntary absence from the area did he inquire of his alleged co-shareholders or partners as to the status of his alleged interest in the business entities, and his Local Rule 3(g) statement of material facts in dispute does not recount any efforts to follow the status of his investment during that period. He does not even assert that he informed defendants as to his whereabouts so that they could keep him up to date as to the status of his alleged investment. The only diligence Mr. Levy asserts is his attempt, *after his return to the area in 1988,* to check on the status of his investment. That action, however, occurred long after the limitations periods had run.

■ Nor can the presumption of fraudulent concealment arising from a fiduciary relationship save Mr. Levy, where, as here, even minimal diligence would have revealed most of the wrongdoing of which he complains. For example, had he paid even the slightest attention to his investment, he would have discovered the corporation's alleged failure to declare dividends, defendants' alleged ousting of him from his positions as director and officer and from participation in the corporation's affair, and the corporation's alleged failure to issue stock certificates. Once those events occurred—*in 1979 by Mr. Levy's account*—plaintiff was on notice and could no longer seek refuge in the fraudulent concealment doctrine; even "in cases involving fiduciary relationships, tolling ceases to work to a plaintiff's benefit when the plaintiff possesses sufficient facts that he must engage in some inquiry, and he fails to live up to this obligation." *Zola v. Gordon,* 685 F.Supp. at 365. In short, absent any showing that defendants made any false representations to him during the applicable limitations periods, absent any demonstration that he ever inquired as to his alleged investment, and it being clear that any wrongdoing that occurred was obvious in 1979, I find that Mr. Levy has failed to present any facts that would allow a reasonable fact finder to apply the doctrines of equitable estoppel or equitable tolling to his action.

In sum, I find no genuine issue of material fact regarding the application of the statutes of limitations to Mr. Levy's claims. Consequently, the applicable statutes of limitations bar all of Mr. Levy's claims that arise from his alleged status as a shareholder in the corporation,[3] and they bar all claims arising from his status as a limited partner for actions that occurred more remotely than the applicable limitations periods.[4]

## B. Motion to Dismiss Remaining Counts

Because the amended complaint often appears to aggregate into single counts various causes of action and the factual bases for those various causes of action, it is difficult to

---

3. Due to the amended complaint's failure to state clearly the nature of and basis for each cause of action, it is difficult to discern exactly which causes of action this finding covers. It is clear, however, that the statute of limitations bars at least the count to require issuance of stock certificates, the count pursuant to the Securities Exchange Act, all counts brought derivatively on behalf of the corporation, as well as those counts seeking monetary damages to Mr. Levy as a shareholder.

4. Because defendants admit that Mr. Levy was a limited partner in the partnership and have presented no evidence showing either that the partnership was dissolved or that Mr. Levy was ousted from his partnership status before the applicable limitations period, the statutes of limitations do not bar Mr. Levy from pursuing claims accruing within the applicable limitations periods arising from his status as limited partner.

discern the full nature of the actions that remain in the complaint in the absence of those on which I have granted summary judgment to defendants. However, it appears that to the extent they seek damages or other remedies for actions occurring within the applicable limitations periods, causes of action remain for breach of fiduciary duty with respect to the partnership, for RICO violations, for conspiracy to deprive Mr. Levy of his interest in the partnership, for damages resulting from defendants' failure to give Mr. Levy his share of the partnership's profits, for dissolution and liquidation of the partnership, and for an order allowing Mr. Levy to inspect the partnership's book's and records. I will now turn to defendants' motion to dismiss these remaining counts.

1. *Failure to Plead RICO's Predicate Acts with Sufficient Particularity*

■ Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." It provides a more stringent pleading requirement than is usual, "stem[ming] not only from the desire to minimize the number of strike suits but also more particularly from the desire to protect defendants from the harm that comes to their reputations or to their good will when they are charged with serious wrongdoing." *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972) (citations omitted). This rule applies to RICO claims containing fraud as one component of the alleged predicate acts. *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991). Because plaintiff has failed to plead the elements of the alleged predicate acts of wire and mail fraud with any degree of particularity at all, I must dismiss his RICO claim.

■ When presenting mail fraud as a predicate act, Rule 9(b) requires the complaint to specify:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the

manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Equitable Life Assur. Soc. v. Alexander Grant & Co.,* 627 F.Supp. 1023, 1029 (S.D.N.Y.1985) (citations and internal quotation marks omitted). Similar requirements apply to allegations of wire fraud, as cases construing one statute apply to the other statute as well. *See United States v. Feldman,* 711 F.2d 758, 763 n. 1 (7th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983).

■ Judged against these standards, the amended complaint is wholly inadequate to comply with Rule 9(b)'s requirements. It alleges only that "Defendants FABER and KILEY, in order to execute their wrongful, illegal and fraudulent plan or scheme to deprive Plaintiff, STUART LEVY, of the value of his interest in the Corporation and Partnership, did transmit or receive documents, notices, funds and/or objects through the United States Postal Service and/or by means of wire communications in interstate commerce." Amended Complaint ¶ 104.

Plaintiff's RICO Statement, filed to comply with this Court's individual rules, fails to remedy this lack of particularity. Although it alleges the existence of wire and mail fraud, it offers no dates for the occurrence of those acts (except to allege that "they occurred between January, 1979 and the present"), and it fails to describe even one particular instance of wire or mail fraud. RICO Statement ¶ 5(b). For example, it describes the circumstances of the alleged wire fraud as "involv[ing] the communication by defendants FABER and KILEY, over the telephone lines, of information in furtherance of their fraudulent scheme." *Id.* The mail fraud allegation, although slightly more particular, still fails to comply with even minimal particularity requirements. It alleges only that the "mail fraud encompassed defendants mailing fraudulent tax returns to the government; mailing fraudulent partnership tax returns to the limited partners; mailing payments for benefits provided to officers; receiving by mail, material from various governmental agencies, insurance companies, banks, *etc.*" *Id.* Plaintiff does not provide

either any basis for discerning which tax returns were mailed during which years to which government, or any factual allegations allowing the court to conclude that he has any basis for believing that these events ever occurred. Nor does plaintiff either allege with particularity or provide sufficient facts from which to infer the scienter required to commit the predicate acts. *See Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987) (although Rule 9(b) allows requisite intent to be averred generally, plaintiffs must still plead events giving rise to a "strong inference" of fraudulent intent).

Plaintiff argues, without any citation, that I should excuse his failure to plead with particularity because "[i]t would be a supreme irony if the defendants were to succeed in their arguments that plaintiff's causes of action should be dismissed because he failed to plead with specificity, when the failure was solely due to defendants' refusal to provide him with the information necessary for him to do so." Plaintiff's Memorandum at 10. Plaintiff misses the point of Rule 9(b). That rule does not require plaintiff to have all the evidence to prove his fraud claims when filing his lawsuit; it merely requires that he allege facts describing what it is he claims defendants have done. *See Equitable Life*, 627 F.Supp. at 1029 ("While the rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded.'") (citation omitted). If Mr. Levy claims to have been hurt by some predicate act, and not just hurt generally by defendants—as he must claim to recover under RICO—he must know what the act was that harmed him. He may not start a law suit and then require the defendants to tell him what it is that they have done to him. *See Segal v. Gordon*, 467 F.2d at 607–08. In short, because plaintiff has failed to plead the predicate acts with any particularity, I must dismiss his RICO claim pursuant to Rule 9(b).

### 2. Lack of Subject Matter Jurisdiction Over the Pendent State Law Claims

 Absent the federal RICO and securities fraud claims, I dismiss the remaining claims in the amended complaint because this court apparently lacks any further basis for jurisdiction over the action. *See* 28 U.S.C. § 1367(c)(3). The complaint does not allege the presence of diversity jurisdiction, nor does it seem that it could, *see Carden v. Arkoma Assoc.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (there can be no diversity jurisdiction in an action between a limited partnership and one of its limited partners).

### C. Cross–Motions for Sanctions

 Finally, both parties cross-move for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). Rule 11 imposes an affirmative duty on the signer of a pleading to inquire into its legal and factual validity before signing it. As the Second Circuit has explained:

> No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim.... Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did.

*Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). In passing on a motion for Rule 11 sanctions, a court must apply an objective standard of reasonableness, *Derechin v. State University of New York*, 963 F.2d 513, 516 (2d Cir.1992), and must resolve all doubts about a pleading's viability in favor of the signer, *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 (2d Cir.1990) (citation omitted). "However, if it is clear that the action was destined to fail based on the facts and existing precedent, and where no reasonable argument could be advanced to change or extend the present law, rule 11 requires a sanction." *Id.* (citation omitted).

 In this case, the above discussion makes it clear that had plaintiff's counsel conducted a reasonable inquiry into the law before filing the amended complaint, he would have had ample reason to conclude

that many of plaintiff's claims—such as his asserted right to dividends or any other damages from the late 1970's and early 1980's—were barred by the relevant statutes of limitations and that Mr. Levy's voluntary ten-year absence from the area, without contact with his alleged co-shareholders and partners, would preclude the invocation of the doctrines of equitable tolling and estoppel. Similarly, even a cursory investigation into the pleading requirements for RICO would have revealed the inadequacy of Mr. Levy's RICO pleading. The failure to cite any relevant case law on any of those issues (on the statute of limitations, why Mr. Levy's lack of diligence should be excused; and, on RICO, the failure to cite even one case supporting such a conclusory pleading) shows this court, as it should have shown Mr. Levy's attorney, that Mr. Levy's arguments on those issues were without merit. Counsel's submission of such a pleading and his response to the motion for sanctions can lead only to the conclusion that counsel failed to conduct the requisite inquiry into the facts and the law. I therefore find that sanctions are warranted.

■ However, not all of the amended complaint's causes of action suffer from sanctionable infirmities. For example, at the time that plaintiff's counsel filed the amended complaint, he may have believed, based on his conversations with his client, that discovery would yield confirmation that Mr. Levy currently held the status of a shareholder or that defendants had wrongfully deprived him of that status during the applicable limitations periods. Resolving all doubts in the signer's favor, I therefore find that sanctions are not warranted for those causes of action that Mr. Levy would have been able to assert had he held the status of shareholder within the applicable limitations periods. Moreover, because I have not ruled on a number of Mr. Levy's state law claims deriving from his alleged status as a partner in the limited partnership, I cannot determine whether the inclusion of those claims in the amended complaint warrants sanctions. Consequently, instead of imposing a sanction upon plaintiff's counsel equivalent to defendants' entire costs for defending this action, I will impose a sanction equalling defendants' costs for defending against those causes of action the inclusion of which in the amended complaint I have here indicated violated Rule 11.[5]

### III. CONCLUSION

For the reasons stated above, summary judgment is granted to defendants on all claims arising from Mr. Levy's alleged status as a shareholder in the corporation and on all other claims to the extent that they request remedies for actions occurring before the commencement of the period of time allowed by applicable statutes of limitations. I deny the motion for summary judgment to the extent it seeks to bar claims for alleged harm to Mr. Levy in his status as a limited partner for actions occurring within the relevant limitations periods. Defendants' motion to dismiss the RICO claim is also granted for failure to allege the predicate acts with sufficient particularity. The remaining claims are dismissed for lack of subject matter jurisdiction. If Mr. Levy is able to comply with RICO's pleading requirements, he may further amend his complaint and properly allege only those claims not barred by this opinion. Any amended complaint must be filed by May 14, 1993.[6]

Also for the reasons stated above, defendants' motion for sanctions is granted, in part, and plaintiff's motion for sanctions is denied. Rule 11 sanctions are imposed on plaintiffs' counsel, in an amount equal to the reasonable attorney's fees and expenses that defendants incurred in pursuing the current motion, only with respect to those claims that I have indicated above warrant sanctions. By May 14, 1993, defendants shall submit an affidavit detailing such costs, showing the hours devoted to each issue by each person,

---

5. Because, as discussed at length in the text, defendants' motion was warranted in law and fact, I deny plaintiff's cross-motion for sanctions.

6. I note that defendants offered several arguments aimed at state law claims that I have not addressed. If plaintiff chooses to further amend his complaint, he should examine defendants' arguments and conduct an inquiry into whether the claims he wishes to refile are well grounded in fact and warranted by existing law or a good faith argument for change in existing law. *See* Rule 11.

and that person's hourly rate. If plaintiff's counsel wishes to respond, he shall do so by May 25, 1993.

SO ORDERED.