**Denise KATZMAN, for and on behalf of herself and on behalf of all others in the class similarly situated, Plaintiffs,**

v.

**VICTORIA'S SECRET CATALOGUE, a division of The Limited, Inc., Leslie H. Wexner, Edward G. Razek, Cynthia Fedus and Betsy Hendrickson, Defendants.**

**No. 96 Civ. 0003 (RWS).**

United States District Court,
S.D. New York.

June 25, 1996.

Howard Gotbetter, New York City, for Plaintiffs.

Fried, Frank, Harris, Shriver & Jacobson (Gregory P. Joseph, of counsel), Parker Chapin Flattau & Klimpl, LLP., New York City (Stephen F. Harmon, and Vorys, Sater, Seymour and Pease, Columbia, OH, of counsel), for Defendants.

### OPINION

SWEET, District Judge.

Defendants Victoria's Secret Catalogue, Leslie H. Wexner, Edward G. Razek, Cynthia Fedus and Betsy Hendrickson (collectively, "VSC") moved pursuant to Rule 12(b)(6) and Rule 9(b), Fed.R.Civ.P., to dismiss the First Amended Complaint filed by Plaintiff Denise Katzman ("Katzman") for failure to state a claim, and pursuant to Rule 11, Fed.R.Civ.P., for sanctions. Katzman moved pursuant to Fed.R.Civ.P. 15 to serve and file a Second Amended Complaint. For the reasons set forth below, Plaintiff's motion to serve and file the Second Amended Complaint is granted, and Defendants' motion to dismiss both the First and Second Amended Complaints and for sanctions is granted.

### Parties

Plaintiff Katzman is an individual residing in New York City. Lois Katz ("Katz") is also an individual residing in New York City, and was added as a Plaintiff in this action upon the Court's granting of Plaintiff's motion to file and serve the Second Amended Complaint. VSC is a well-known manufacturer and distributor of women's clothing, which sells large volumes of merchandise via mail order catalogue. VSC was allegedly formerly a division of The Limited, Inc. and currently is a division of Intimate Brands, Inc. The individual Defendants, Leslie H. Wexner, Edward G. Razek, Cynthia Fedus and Betsy Hendrickson, are all officers or employees of VSC or The Limited, Inc.

### Prior Proceedings

The Complaint in this class action was filed on January 2, 1996, and the First Amended Complaint was filed on January 4, 1996. The First Amended Complaint alleges that Defendants' pricing structures with respect to catalogues mailed to different recipients constitute a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962.

On February 6, 1996, VSC moved to dismiss the First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim and Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity. On March 5, 1996, VSC moved pursuant to Fed.R.Civ.P. 11 for sanctions against Katzman and her counsel, Howard Gotbetter, Esq. ("Gotbetter"), for the filing of a frivolous lawsuit.

On March 15, 1996, Plaintiff moved pursuant to Fed.R.Civ.P. 15 for leave to serve and file a Second Amended Complaint, alleging violations of 15 U.S.C. §§ 1051 *et seq.,*

§ 1125(a) ("the Lanham Act"), to seek to add Katz as an additional named plaintiff, and to provide additional detail on the alleged discriminatory scheme.

Oral argument on VSC's motion to dismiss and for sanctions, and on Katzman's motion to serve and file a Second Amended Complaint, was heard on May 1, 1996, at which time the Court granted Katzman's motion to file and serve the Second Amended Complaint, and converted VSC's opposition to that motion into a motion to dismiss the Second Amended Complaint for failure to state a claim. The motions were considered fully submitted at the time of oral argument.

*Facts*

■ On a Rule 12(b)(6) motion to dismiss, the factual allegations of the Complaint are presumed to be true and all factual inferences must be drawn in the plaintiffs' favor and against the defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The factual allegations of Plaintiffs' First and Second Amended Complaints as set forth below are therefore presumed to be true for the purpose of deciding the present motion to dismiss.

In December 1995, Katzman received in the mail a catalogue (the "First Catalogue") from VSC which offered: "Take $10 off" "Any purchase of $75 or more." (First Am. Compl. ¶ 5.) Defendants prepared another catalogue in December 1995 (the "Second Catalogue") which offered "Take $25 off" "Any purchase of $75 or more." (*Id.* ¶ 11.) The Second Catalogue was mailed to and received by "male adults," including an unidentified adult male, fitting a separate demographic pattern from recipients of the First Catalogue. (*Id.* ¶¶ 13, 14; Second Am. Compl. ¶ 19.) Katzman alleges that she "and upon information and belief members of her class would have bought merchandise from [the First Catalogue] had it not been for the discovery of the larger discount or deduction available to those who could buy the same merchandise from [the Second Catalogue]." (*Id.* ¶ 32.) Further, the second catalogue was sent to "persons who perhaps made a previous purchase from a VSC catalogue." (Second Am.Compl. ¶ 20.)

According to the First Amended Complaint, on prior occasions in 1994 and 1995 VSC also mailed two versions of the same catalogue offering the same item to different classes of customers at different prices. (¶¶ 18, 19.)

The Second Amended Complaint alleges that Katz received one of three different versions of VSC's Christmas 1995 catalogue, the one that "contained the worst deal of the three." (¶¶ 34–40.) She purchased two items for a total of $68 and received a $5 new customer discount. By ordering from the catalog offering a $5 discount on a purchase of $75 rather than from the catalog offering a $25 discount on a $75 purchase, Katz was deceived into not making an additional $10 purchase which would have cost her only $53 ($78 minus the $25 discount) if she had received and ordered from one of the Christmas 1995 catalogs offering the better discount. (*Id.* ¶ 40.)

***Discussion***

**I. *Plaintiffs' RICO Claim Will Be Dismissed***

The Amended Complaint alleges that VSC and the named individual Defendants have engaged in criminal conduct in violation of RICO. The gravamen of Plaintiffs' RICO cause of action is that VSC has systematically, intentionally, and unlawfully discriminated in its pricing structures by sending Katzman a catalogue offering $10 off, and Katz a catalogue offering $5 off, any purchase of $75 or more, while other individuals received a catalogue offering $25 off any purchase of $75 or more. This conduct is alleged to constitute a "continuing pattern of activity and ... a continuing enterprise ... in continuing violation of laws," (¶ 22), and "a series of continuing and illegal and predicate acts in violation of the RICO statute and such acts and activity shall be considered racketeering activity under the RICO stature (sic)." (¶ 24.)

The RICO provisions of the Organized Crime Control Act of 1970 were enacted expressly, as set forth in the preamble to the Act, "to seek the eradication of organized crime in the United States." Pub.L. No. 91–452 (1970). Although essentially a criminal

statute, RICO provides for civil penalties by private parties who have been injured "by reason of" a RICO violation. 19 U.S.C. § 1964(c). In particular, the statute makes it unlawful for any person to (a) use money derived from a pattern of racketeering activity[1] to invest in an enterprise, (b) acquire control of an enterprise through a pattern of racketeering activity, (c) conduct or participate in the affairs of an enterprise through a pattern of racketeering activity, or (d) conspire to do any of those things. *See* 18 U.S.C. §§ 1962(a)–(d).

■ "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir.1991). Because the "mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria,* 896 F.2d 645, 650 (1st Cir.1990). Here, as set forth below, Plaintiff patently fails to state a claim under RICO because she (i) fails to allege "predicate acts" of racketeering activity; (ii) fails to allege a "pattern of racketeering activity"; and (iii) otherwise fails to allege a violation of subsections (a), (b), (c) or (d) of RICO. Accordingly, Katzman's RICO claim will be dismissed pursuant to Rule 12(b)(6).

### A. *Plaintiffs Fail To Allege RICO Predicate Acts*

■ In order to state a claim under RICO, it must be alleged that Defendants committed one of the predicate acts specifically listed in 18 U.S.C. § 1961(1). The Proposed Second Amended Complaint is based solely on the conclusory allegation that Defendants engaged in mail fraud. (RICO

Case Statement ¶ 5(a).)[2] This allegation, however, is inadequate because neither the Proposed Second Amended Complaint nor the RICO Case Statement identifies any fraudulent misrepresentations or material omissions. *See Browning Ave. Realty Corp. v. Rosenshein,* 142 F.R.D. 85, 90 (S.D.N.Y. 1992) (Sweet, J.) (proposed amended RICO complaint deemed futile because plaintiff failed to allege, *inter alia,* how a letter was fraudulent). The allegation is also inadequate because Katzman fails to provide any factual basis for her conclusory allegations of fraudulent intent.

### 1. *Plaintiffs Fail To Identify Any Fraudulent Misrepresentations Or Material Omissions*

The Second Amended Complaint quotes promotional language from various catalogs distributed by VSC which Katzman alleges to be fraudulent, but that characterization is conclusory and unsupported by either the language itself or any allegations of fraudulent conduct. The quoted language clearly states that a person purchasing from a particular catalog is entitled to the discount or dollar reduction stated in that catalog. *See* Second Am.Compl. ¶¶ 6, 7, 9, 12, 13, 24, 25, 26, 27, 31, 35, 36, 47, 48, 50, 53, 54, 56, 57, 58, 72, 73, 77. Nothing in the Second Amended Complaint or the RICO Case Statement suggests that the quoted language is false in any respect or that a person purchasing from that catalog does not, in fact, receive the promised discount or dollar reduction on purchases made from that catalog.

■ Although Plaintiffs claim that the catalogs contain the representation that "all the prices and deals in the Catalogues are the same for all those who receive them," RICO Case Statement ¶ 2, they have not, and cannot, point to any language in a VSC cata-

---

1. A "pattern of racketeering activity" is defined in § 1961(5) as "at least two acts" of prohibited conduct within a ten-year period; these "predicate·acts", in turn, are defined as specifically enumerated criminal offenses. 18 U.S.C. § 1961(1).

2. Insofar as Katzman may assert that Defendants' alleged violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.,* and the Federal Trade

Commission Act, 15 U.S.C. § 45, are predicate acts, those statutes are not among those listed under § 1961(1) and, therefore, alleged violations of those statutes cannot satisfy the requirement for allegations of RICO predicate acts. *See Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F.Supp. 576, 586 (S.D.N.Y.1995) (Sweet, J.) ("Those offenses which may serve as predicate acts for a RICO claim are *exclusively* listed in § 1961") (emphasis added).

logue which actually makes such a statement. Moreover, they have not provided any basis upon which the language contained in the catalogues could be construed as making such a representation. Rather, Plaintiffs merely make a conclusory allegation which cannot withstand a motion to dismiss. *See Sequa Corp. v. Gelmin,* 851 F.Supp. 106, 111 (S.D.N.Y.1994); *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.,* 850 F.Supp. 1105, 1146 (S.D.N.Y.1993) (if "Plaintiffs' own exhibits referred to in the Complaint negate the allegations of their pleadings, a court is not required to consider unsupported allegations").

▮ Similarly, Plaintiffs have failed to establish that Defendants made fraudulent omissions. "An omission of a material fact can constitute fraud under RICO if either there exists a duty to disclose the information or the defendant makes statements of half-truths or affirmative misrepresentations." *Caraluzzi v. Prudential Sec., Inc.,* 824 F.Supp. 1206, 1212 (N.D.Ill.1993). Plaintiffs do not identify any duty which requires Defendants to sell their goods to all buyers at the same prices. Furthermore, they have not, and cannot, identify any basis in federal or state statutes or the common law for imposing on the Defendants a duty to disclose VSC's promotional practices. Absent the existence of any such duty to disclose, a mail fraud claim premised on a material omission must fail. *See Cooperativa Ahorro y Crédito Aguada v. Kidder, Peabody & Co.,* 777 F.Supp. 153, 159 (D.P.R.1991) (omission not violation of mail fraud statute absent duty to disclose); *Heritage Ins. Co. v. First Nat'l Bank,* 629 F.Supp. 1412, 1415 (N.D.Ill. 1986) (absent duty to disclose, plaintiffs cannot assert mail fraud claim based on alleged failure to disclose).

**2. *The Proposed Second Amended Complaint Fails To Provide Any Basis For The Conclusory Allegations Of Fraudulent Intent***

▮ Similarly, Katzman's conclusory allegations of the Defendants' fraudulent intent are unsupported by the factual circumstances described in the Second Amended Complaint and the RICO Case Statement. In order to plead a claim of mail fraud, a plaintiff must allege "factual circumstances giving rise to a strong inference that the defendant had the requisite fraudulent intent." *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 281 (S.D.N.Y.1991) (citing, *inter alia, Ouaknine v. MacFarlane,* 897 F.2d 75 (2d Cir. 1990)). Because Plaintiffs' Second Amended Complaint and RICO Case Statement are devoid of any factual basis for their conclusory allegations of Defendants' fraudulent intent, the Complaint fails to allege a predicate act of mail fraud and will be dismissed under Rule 12(b)(6). *See Easton v. Sundram,* 1990 WL 102231, at *77, 1990 U.S.Dist. LEXIS 8637, at *21–22 (S.D.N.Y.1990), *aff'd,* 947 F.2d 1011 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

**B. *The Second Amended Complaint Fails To Allege A Pattern Of Racketeering Activity***

▮ Under RICO, the alleged predicate act of racketeering activity must be part of a "pattern" of racketeering activity. In the absence of a predicate racketeering act, no "pattern" of racketeering activity can exist. *See Powers v. British Vita, P.L.C.,* 842 F.Supp. 1573, 1584 (S.D.N.Y.1994) ("Having rejected on the pleadings all of the predicate racketeering acts alleged by Plaintiff to underlie his RICO claim against Defendants, it is axiomatic that Plaintiff has failed to allege a pattern of 'racketeering activity' within the RICO statute"), *aff'd in part, rev'd in part, on other grounds,* 57 F.3d 176 (2d Cir.1995); *Scheiner v. Wallace,* 860 F.Supp. 991, 997 n. 3 (S.D.N.Y.1994). Because Plaintiffs have failed in their attempt to plead mail fraud as a predicate act, and have pleaded no other RICO predicate act, Defendants have not engaged in a pattern of racketeering, as necessary to establish a RICO violation.

**C. *Plaintiffs Fail To State A Claim Under 18 U.S.C. § 1962***

Although Plaintiffs' failure to plead RICO predicate acts, much less a pattern of racketeering activity, is itself fatal to Plaintiffs' RICO claim, the other deficiencies in that

RICO claim are sufficiently grave to warrant specific mention.

Plaintiffs assert that Defendants violated each of the four subsections of § 1962. The allegations of the Second Amended Complaint, however, fail as a matter of law to state a claim under any of these subsections.

### 1. *Section 1962(a)*

 Subsection 1962(a) makes it unlawful for a person "who has received any income derived ... from a pattern of racketeering activity ... to use or invest [that income] in the [acquisition, establishment or operation of] any enterprise." If Plaintiffs had adequately alleged that the Defendants engaged in a pattern of racketeering activity, they would then be required to allege an injury suffered as a result of the use or investment of alleged racketeering income. Plaintiffs here not only failed to allege a pattern of racketeering activity, they also completely failed to allege any injury caused by the use or investment of alleged racketeering income. This alone bars their § 1962(a) claim. *Ouaknine*, 897 F.2d at 82–83; *Morin v. Trupin*, 832 F.Supp. 93, 99 (S.D.N.Y.1993). Plaintiffs' conclusory allegation that Defendants "used or invested" income received from VSC, (*see* RICO Case Statement § 11), is insufficient because it fails to allege how that use or investment injured them or any member of the proposed class. *See Schick v. Ernst & Whinney*, 1991 WL 8543, at *8–9, 1991 U.S.Dist. LEXIS 584, at *24–25 (S.D.N.Y.1991).

Moreover, the assertion that Katz was injured through the alleged mail fraud, (*see* RICO Case Statement ¶¶ 4, 15, 16), is not an adequate substitute because the required allegation of injury from the use or investment of racketeering income must be distinct from the injury allegedly caused by the predicate acts. *Morin*, 832 F.Supp. at 99 ("In this Court, § 1962(a) only allows a plaintiff to sue for injuries which arise out of the use or investment of racketeering income, not merely for injuries based on racketeering activity"); *Zaro Licensing*, 779 F.Supp. at 283 (noting that injury must stem from the use or investment of the income in some enterprise and not from the predicate acts).

 Finally, Plaintiffs' allegation that VSC used "overpayments" it received from the alleged mail fraud to perpetuate the fraud and send out catalogs that Katzman and Katz eventually received, (*see* RICO Case Statement ¶ 11), is also insufficient. Courts have repeatedly held that the injury causation requirement of § 1962(a) is not satisfied by allegations that a defendant, which is also the enterprise, invested the racketeering income in its general operations, thereby permitting it to continue its pattern of racketeering and cause further injury. *See Vista Co. v. Columbia Pictures Indus., Inc.*, 725 F.Supp. 1286, 1299–1300 (S.D.N.Y.1989); *DeMuro v. E.F. Hutton*, 643 F.Supp. 63, 67 (S.D.N.Y.1986) (rejecting such an argument as "a vast and unwarranted extension of the boundaries of civil RICO"). Plaintiffs therefore fail to state a claim under § 1962(a).

### 2. *Section 1962(b)*

 Subsection 1962(b) makes it unlawful for "any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise." Thus, "[t]o state a claim under § 1962(b), a plaintiff must allege an injury resulting from the acquisition or control of an enterprise through a pattern of racketeering activity." *Official Publications v. Kable News Co.*, 775 F.Supp. 631, 635 (S.D.N.Y.1991). As with § 1962(a), in order to state a claim under § 1962(b), a plaintiff must allege that the injury was caused by the acquisition or maintenance of control and not by the predicate acts. *See O & G Carriers, Inc. v. Smith*, 799 F.Supp. 1528, 1543 (S.D.N.Y.1992). By failing to allege how she was injured by an acquisition or maintenance of control, Katzman has failed to plead a violation of § 1962(b). *Morin*, 832 F.Supp. at 99.

### 3. *Section 1962(c)*

 Subsection 1962(c) prohibits "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity." Plaintiffs' claim un-

der § 1962(c) fails because it alleges that Defendants and the "enterprise" are identical. Under § 1962(c), the culpable "person" (defendant(s)) and the "enterprise" must be distinct. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339, 344 (2d Cir.1994); *Three Crown Ltd. Partnership v. Caxton Corp.,* 817 F.Supp. 1033, 1045 (S.D.N.Y.1993). Plaintiffs describe the enterprise in terms of the Defendants: "A combination of those defendants named and others including an entity name INTIMATE BRANDS INC. which is now the parent of VSC and controlled by Limited by virtue of 94% voting power in that entity." (RICO Case Statement ¶ 6.) Thus, Plaintiffs attempt to allege an "association in fact" enterprise consisting of The Limited, Inc., companies in which it has a controlling interest, and their employees. *See* 18 U.S.C. § 1961(4).

In cases involving similar allegations, courts have held the required pleading of distinctness between the defendants and the enterprise has not been satisfied. In *Riverwoods,* the Second Circuit affirmed the dismissal of a complaint wherein the plaintiffs had alleged an association-in-fact enterprise consisting of the defendant bank and two of its loan offices. *Riverwoods,* 30 F.3d at 341, 344. The court reasoned that "where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Id.*

Because the enterprise alleged by Katzman ignores the required distinction between the culpable "person" and the "enterprise," the Second Amended Complaint fails to state a claim for violation of § 1962(c).

#### 4. *Section 1962(d)*

Subsection 1962(d) makes it unlawful for any person "to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section." Katzman's failure to adequately plead facts that would satisfy the pleading requirements of §§ 1962(a), 1962(b) or 1962(c) necessarily dooms any claim she might assert arising under § 1962(d). *See Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 495 (6th Cir.1990) (when a complaint fails to state a claim under either §§ 1962(a), 1962(b) or 1962(c), then a claim under § 1962(d) fails as well).

### II. *Plaintiffs' Lanham Act Claim Will Be Dismissed*

Plaintiffs' claim under § 1125(a) of the Lanham Act fails because, as consumers, Plaintiffs lacks standing to sue. In 1971, the Second Circuit addressed for the first time the issue of whether consumers have standing to sue under § 1125(a), and held that *only* commercial entities with a reasonable interest to be protected may sue under that section. *Colligan v. Activities Club of N.Y., Ltd.,* 442 F.2d 686 (2d Cir.1971), *cert. denied,* 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971) (affirming dismissal of class action brought by consumer for lack of standing). Courts in this district have uniformly followed *Colligan. See, e.g., Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 828 F.Supp. 1114, 1124 (S.D.N.Y.1993) ("the Second Circuit has limited standing to commercial parties, excluding 'mere consumers' "), *aff'd,* 32 F.3d 690 (2d Cir.1994); *West Indian Sea Island Cotton Ass'n v. Threadtex, Inc.,* 761 F.Supp. 1041, 1048 (S.D.N.Y.1991) ("Standing under the Lanham Act is restricted to commercial parties"); *Rosenfeld v. W.B. Saunders,* 728 F.Supp. 236, 242 (S.D.N.Y.1990) ("the Second Circuit has restricted standing to purely commercial parties, thereby excluding ordinary consumers"), *aff'd without opinion,* 923 F.2d 845 (2d Cir.1990); *Construction Technology v. Lockformer Co.,* 704 F.Supp. 1212, 1223 (S.D.N.Y.1989) ("consumers have no standing under the Lanham Act").

Moreover, although Plaintiffs represent otherwise, (*see* Second Am.Compl. ¶ 99), courts in the other circuits also have repeatedly held that consumers do not have standing to sue under § 1125(a). *See, e.g., Barrus v. Sylvania,* 55 F.3d 468, 470 (9th Cir.1995) (declining to find standing for consumers who alleged neither a commercial nor a competitive injury); *Serbin v. Ziebart Int'l Corp., Inc.,* 11 F.3d 1163, 1179 (3d Cir.1993) ("we join the Second Circuit in holding that Congress, when authorizing federal courts to deal with claims of false advertising, did not

contemplate that federal courts should entertain claims brought by consumers"); *Cromer v. Lounsbury Chiropractic Offices, Inc.*, 866 F.Supp. 960, 963 (S.D.W.Va.1994) ("The leading cases ... consistently hold that the Lanham Act protects only commercial interests").

■ The courts' refusal to allow consumers standing to sue under § 1125(a) stems from the recognition that "one problematic consequence of extending the Lanham Act coverage to consumers would be the transformation of the federal court system into a veritable small claims court." *Maguire v. Sandy Mac, Inc.*, 145 F.R.D. 50, 53–54 (D.N.J.1992); *see also, Swartz v. Schaub*, 826 F.Supp. 274, 276 (N.D.Ill.1993) ("Essentially [plaintiff] would seek to federalize every contract for the sale of goods in which a buyer charges the seller with misrepresentation, and the law simply does not support that in a one-to-one transaction such as that involved here").

Based on the precedent established by the Second Circuit, courts in this district, and other federal courts, neither Katzman nor Katz have standing to assert a claim on behalf of consumers under § 1125(a) of the Lanham Act.

### III. *Rule 11 Sanctions Will Be Imposed*

Rule 11 provides, in relevant part:

**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, [and]; ...

(3) the allegations and other factual contentions have evidentiary support. . . .

■ Thus, in filing the First and Second Amended Complaints with this Court, Plaintiffs' counsel has certified that the claims are warranted by existing law, and that the allegations have evidentiary support. Because Plaintiffs' claims are plainly not warranted under existing law, and because the minimum required factual allegations to support a RICO claim cannot be supported by evidence, Plaintiffs' counsel will be sanctioned for filing this action.

■ The Second Circuit held in *Eastway Constr. Corp. v. City of New York* that a violation of Rule 11 is triggered in either of two situations:

when it appears that a pleading has been interposed for any improper purpose, *or where,*—after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *see also O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 705 (2d Cir. 1990). The Court in *Eastway* concluded that Rule 11 sanctions are appropriate "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands. . . ." *Eastway*, 762 F.2d at 254. Sanctions must, however, be imposed carefully, lest they chill the creativity essential to the evolution of the law. *See Murphy v. Cuomo*, 913 F.Supp. 671, 682 (N.D.N.Y. 1996), *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994).

■ The Complaint in this action includes two causes of action, one under the Lanham Act and one under RICO. Plaintiffs allege, contrary to long-standing Second Circuit precedent, that individual consumers should have standing to sue under the Lanham Act. As set forth above, Plaintiffs' Lanham Act claim is not supported by existing law and will be dismissed pursuant to Rule

12(b)(6). Nonetheless, Plaintiffs' Lanham Act claim, when viewed with utmost leniency, may be seen as a good faith argument for the extension of the law beyond its current parameters. The Lanham Act claim is therefore not sanctionable, even though it seems clearly destined to fail. *See* Fed.R.Civ.P. 11, Adv.Comm. Note.

Plaintiffs' claim under RICO, however, cannot reasonably be said to constitute a good faith attempt to extend existing law. Although litigants are not required to specifically identify good faith claims for the extension or modification of existing law, mere assertions contrary to existing precedent do not automatically qualify as such arguments. While rigid rules for good faith arguments for the extension of present law should not be established, focused policy arguments, or citation to contrary authority or law review articles will be more likely to lead the court to characterize the argument as such. *See* Fed.R.Civ.P. 11, Adv.Comm. Note. Plaintiffs' counsel offers no explanation or argument for why this otherwise wholly deficient claim should be viewed as an argument for the extension of present RICO requirements. Plaintiffs' RICO claim is not a reasoned argument for the extension of the law but merely a woefully inadequate and fatally flawed pleading.

As set forth above, a RICO claim is necessarily composed of specific statutory elements. Among other required allegations, the plaintiff must identify the predicate act, the enterprise, and the injury suffered. Plaintiffs here have manifestly failed to meet even the most rudimentary requirements of any of the four distinct subsections of a § 1962 RICO claim. As set forth above, Plaintiffs fail to properly plead a single cognizable "predicate act" of "racketeering activity" much less a "pattern of racketeering activity." Put simply, Defendants' conduct—offering different discounts to different catalogue customers—does not constitute mail fraud under any reading of the law, and no authority or basis for such a conclusion was advanced by Plaintiffs.

Plaintiffs allege an "enterprise" that is similarly deficient in its articulation; Plaintiffs claim simply that "the enterprise consists of all defendants named and "the purpose of the enterprise is to make as much money as possible by mailing millions of deceptive catalogues to many millions of consumers and to practice a fraud on the marketplace." (Am.Compl. ¶ 6.) As set forth above, catalogue mailings of the sort sent by Defendants in the pursuit of profit can not reasonably be claimed to constitute an illegal enterprise under RICO."

Rule 11 exists in part to protect defendants and the court from wasteful, frivolous and harassing lawsuits, and provides for sanctions in the event of violation in order to deter the bringing of such frivolous suits. Fed.R.Civ.P. 11. Rule 11's deterrence value is particularly important in the RICO context, as the commencement of a civil RICO action has "an almost inevitable stigmatizing effect" on those named as defendants. *Figueroa Ruiz*, 896 F.2d at 650. Accordingly, Courts in this Circuit have on numerous occasions imposed Rule 11 sanctions based upon the filing of a frivolous RICO action. *See, e.g., O'Malley*, 896 F.2d 704 (imposing sanctions for filing frivolous RICO action); *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 123 (S.D.N.Y.1993) (imposing sanctions where "even a cursory investigation into the pleading requirements for RICO would have revealed the inadequacy of [plaintiff's] RICO pleading"); *McLoughlin v. Altman*, 1995 WL 640770, *2 (S.D.N.Y. October 31, 1995) (Wood, J.) ("[a]nother example of [plaintiff's] violation of the 'frivolous' clause ... is his failure to properly plead a single element of a sustainable RICO claim, *see* 18 U.S.C. § 1962, manifesting a total lack of legal research and preparation on the part of the plaintiff's attorney").

As even a cursory examination of the requirements for bringing suit under RICO would have revealed the impossibility of the claim's success, Plaintiffs' filing was objectively unreasonable and therefore constitutes a Rule 11 violation. *See LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 436 (S.D.N.Y.1995) (counsel's complete failure to allege topics essential to the statutory claim held objectively unreasonable and sanctions imposed). Similarly, where claims are so far deficient in alleging statutory requirements

as in the present case, whether the violation is deliberate or merely the result of "extraordinarily shoddy" research, the filing warrants the imposition of sanctions. *Chemiakin v. Yefimov,* 932 F.2d 124, 126 (2d Cir.1991).

The total lack of substance in the Plaintiffs' RICO claims and the egregious and unjustified neglect of the required statutory elements gives rise to the inference that the action was filed for improper purposes. Further, after filing suit against VSC, Katzman and Gotbetter appeared on several television programs and were quoted in several print media regarding their allegations of VSC's wrongdoing and the lawsuit they had commenced. While Gotbetter represented to the Court that he did not initiate any of the publicity attending this lawsuit, at a minimum, as a result of Gotbetter's and Katzman's actions, Defendants have been made to respond to a patently meritless complaint and to suffer unwarranted adverse publicity.

■ Both the Supreme Court and the Second Circuit have emphasized that the purpose of the sanctioning mechanism of Rule 11 "is not reimbursement but 'sanction,'" "and that, accordingly, Rule 11 sanctions 'shall be limited' to what is sufficient to deter repetition of such conduct or comparable conduct by others." *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 126, 110 S.Ct. 456, 459–460, 107 L.Ed.2d 438 (1989); *see also Eastway,* 762 F.2d at 254 (holding that a fee substantially less than the lodestar amount is permissible).

■ Consistent with these holdings, Rule 11 was amended in 1993 to permit the Court to order "payment to the movant of some or all of the reasonable attorney's fees" only "if imposed on motion and warranted for effective deterrence." Fed.R.Civ.P. 11.

Since the purpose of Rule 11 sanctions is to deter rather than compensate, the [amended] rules provides that, if a monetary sanction is imposed, it should ordinarily be paid into the court as a penalty. However, under unusual circumstances, particularly for b(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also

directs that some or all of this payment be made to those injured by the violation.

*McLoughlin,* 1995 WL 640770 at *3 (holding that evidence of counsel's bad faith constituted unusual circumstances). Under the amended Rule 11, Courts in this district have imposed monetary sanctions for frivolous contentions of law. *See, e.g., Segarra v. Messina,* 158 F.R.D. 230, 233–34 (S.D.N.Y. 1994). Pursuant to the 1995 Amendment of Rule 11, the Court may not impose monetary sanctions upon a represented party for the filing of a legally frivolous claim. Fed. R.Civ.P. 11(c)(2)(A); *see also* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse,* § 5(E)(1), pp. 109–10 (2d ed.1994).

Accordingly Plaintiffs' counsel will be ordered to pay Defendants' legal fees in the amount of $5,000. In view of the flagrant lack of merit to Plaintiffs' RICO claims, the likelihood that this action was filed for improper purposes, and the substantial burden this litigation has imposed on Defendants, a significant monetary sanction will be ordered, to be paid directly to Defendants. While $5,000 is certainly less than Defendants' total legal fees incurred as a result of Plaintiffs' improper filing, it is nonetheless the minimum amount the Court deems necessary to constitute an appropriate sanction. This Opinion constitutes an appropriate sanction against Katzman for her role in promoting this lawsuit.

### Conclusion

Plaintiffs' Complaint is hereby dismissed in its entirety. Katzman is hereby sanctioned, and Gotbetter is hereby sanctioned and ordered to pay Defendants legal fees in the amount of $5,000.

It is so ordered.